Truman H. Newberry v. Commissioner.
Truman v. Commissioner
Docket No. 2480.
United States Tax Court
1945 Tax Ct. Memo LEXIS 174; 4 T.C.M. (CCH) 589; June 6, 1945
*174 H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., and James Turner, Esq., for the petitioner. Philip M. Clark, Esq, for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for 1939 and 1940 of $7,371.03 and $3,875.92, respectively. The questions in issue are (1) whether the basis for computing gain or loss upon the redemption of bonds of certain political subdivisions of the State of Florida in 1939 and 1940 was the fair market value of substituted bonds at the date they were exchanged for the original obligations, or the cost to the petitioner of the original obligations, and (2) whether the basis for computing gain or loss upon the sale in 1940 of certain debenture bonds of the Associated Gas & Electric Corporation was the fair market value at the date those bonds were received in exchange for debenture bonds of a like par value of the Associated Gas & Electric Co., or the cost to the petitioner of the bonds first acquired. Findings of Fact We adopt as our findings of fact those stipulated by the parties. The petitioner is a resident of Grosse Pointe *175 Farms, Michigan. He filed his income tax returns for 1939 and 1940 with the collector of internal revenue for the district of Michigan. On January 31, 1924, the petitioner purchased $4,000 par value Pinellas County, Florida, 5 1/2 Percent Bridge Bonds maturing in 1954, and $46,000 par value Pinellas County, Florida, 5 1/2 Percent Highway Bonds maturing at various dates from 1943 to 1953. The cost of these bonds to the petitioner was $51,695.85. On February 13, 1924, the petitioner purchased at a cost of $25,951.40, $25,000 par value Pinellas County, Florida, 5 1/2 Percent Highway Bonds maturing on July 1, 1954. The above-referred to bonds were validated by decrees of the Circuit Court of the Sixth Judicial Circuit of Florida, dated July 9, 1923. The petitioner received interest on the abovementioned bonds regularly until July 1, 1933, when the first default occurred. Under date of July 21, 1934, the Pinellas County Refunding Agency advised the holders of Pinellas County, Florida, bonds that Refunding Bonds had been validated for all Countywide, General, Road and Bridge and Highway Bond issues and all Special Road and Bridge Distrcts Numbers 1, 2, 3, 4, 7, 8, 9 and 13 bond issues. *176 Under date of October 8, 1934, the Pinellas County Refunding Agency advised the petitioner in a circular that the general refunding program had been declared operative and the Refunding Bonds were deliverable through the First National Bank, Chicago. Shortly thereafter the petitioner forwarded the above-referred to bonds to the First National Bank at Chicago, and, on December 10, 1934, received from that bank $75,000 par value Pinellas County, Florida, Road and Bridge Refunding Series "A" Bonds in exchange for the bonds described above. The bonds received in exchange provided for the payment of 4 percent interest thereon from the date of the bonds. April 1, 1933, to April 1, 1938; at 5 percent from that date to April 1, 1943; and at 5 1/2 percent thereafter to the date of maturity. The difference in interest between the above rates and the rate of 5 1/2 percent provided in the Bridge and Highway Bonds, which were refunded, was evidenced by a non-detachable, non-interest bearing certificate payable at the maturity of each bond and was known as deferred interest. The refunding bonds also provided that the obligor could call any of the bonds at par, plus accrued interest, but without *177 any portionof the aforesaid interest, upon any interest payment date on or prior to approximately 9 years from the date of issue. Both the original bonds acquired by the petitioner and the Refunding Bonds received in exchange irrevocably pledged "the full faith and credit" of the obligor to the payment of both principal and interest. The Refunding Bonds, as the original bonds, were duly validated by a decree of the proper state court. The fair market value of the Pinellas County, Florida, Road and Bridge Refunding Series "A" Bonds "was not less than $580 for each $1,000 par value bond on October 17, 1934 and October 19, 1934." On October 5, 1939, the $75,000 par value Pinellas County, Florida, Road and Bridge Refunding Series "A" Bonds were redeemed at par. In his income tax return for 1939 the petitioner used as a basis for computing gain or loss upon the redemption of the bonds the cost to him of the bonds originally purchased. The respondent in the determination of the deficiency used as the basis the fair market value of the bonds at the date of substitution. Pinellas County, Florida, Special Road and Bridge District #6 Bonds On February 25, 1925, the petitioner purchased *178 the following described Pinellas County, Florida, Special Road and Bridge District #6 Bonds at a cost of $26,000: Date of
Due
Par
Rate of
Bond No.
bonds
Date
Value
interest
424-448, incl.
12/1/24
12/1/42
$25,000
6%
The bonds were duly validated by court decree dated November 24, 1924. The petitioner received interest on the abovedescribed bonds regularly until December 1, 1932, when the first default occurred. Thereafter a similar procedure was had as described above with respect to the bonds which were refunded by the Pinellas County, Florida, Road and Bridge Refunding Series "A". On July 30, 1934, the petitioner received from the First National Bank in Wichita $25,000 par value Pinellas County, Florida, Special Road and Bridge District #6, Road and Bridge Refunding Bonds in exchange for his bonds. These bonds provided for the payment of interest at the rate of 4 percent from December 1, 1932, to April 1, 1938, then at the rate of 5 percent to April 1, 1943, and then at 6 percent to April 1, 1953, the date of maturity. The bonds had a non-detachable, non-interest bearing certificate payable at maturity of each bond for deferred interest. *179 The obligor had the right, however, to redeem the bonds at par upon any interest payment date on or prior to approximately 9 years from the date of issue without being liable for the payment of interest provided for in the non-detachable, non-interest bearing certificate. The fair market value of the substituted bonds on July 29, 1934, and July 17, 1934 "was not less than $480 for each $1,000 par value of bond." On October 5, 1940, the $25,000 par value Pinellas County, Florida, Special Road and Bridge District #6 and Bridge Refunding Bonds, as acquired by the petitioner, were redeemed at par. In his income tax return for 1940 the petitioner used the basis of cost of the original bonds acquired by him in 1925 in computing gain or loss upon the redemption. The respondent used the basis of the fair market value of the bonds at the date of substitution in computing the gain realized on redemption. Associated Gas & Electric Corporation Debenture Bonds On August 17, 1942, the petitioner was the owner of $7,100 par value Associated Gas & Electric Co. 5 Percent Convertible Debenture Bonds due May 15, 1965. Interest was paid upon these bonds for a short period. In 1933 the petitioner *180 was given an option by the Associated Gas & Electric Co. to exchange his convertible debenture bonds due May 15, 1965, for a like par value of Associated Gas & Electric Corporation 4 Percent Income Debentures due 1978. The Associated Gas & Electric Corporation was in 1933 and 1934 the immediate subsidiary of Associated Gas & Electric Co. The Associated Gas & Electric Corporation, through sub-holding companies, owned all or substantially all of the common stocks of the operating subsidiaries of Associated Gas & Electric Co. The petitioner elected to make the exchange and under date of February 17, 1934, mailed his $7,100 par value Associated Gas & Electric Co. 5 Percent Convertible Debenture Bonds due May 15, 1965, to "Public National Bank and Trust Company for Associated Gas & Electric Co.," New York City, with a letter of transmittal indicating his wish to exchange them for Option 2 "Plan of Rearrangement of Capitalization." On March 20, 1934, the petitioner received $7,100 par value Associated Gas & Electric Corporation 4 Percent Income Debentures due 1978. On February 17, 1934, the fair market value of the debentures was $23 for each $100 par value debenture and on March 20, 1934, was *181 $20 for each $100 par value debenture. On February 16, 1940, the petitioner sold his $7,100 par value of Associated Gas & Electric Corporation 4 Percent Income Debentures due 1978 for $1,144.25. In his income tax return for 1940 the petitioner claimed that he sustained a capital loss upon the sale of the debentures represented by the difference between the price received for the debentures and the cost to him of a like amount of the debentures of the Associated Gas & Electric Co. The respondent has used as the basis the fair market value of the "corporation" debentures at the date of exchange for computing loss upon the sale. Opinion The first question presented by this proceeding is the amount of capital gain or loss realized or sustained by the petitioner from the redemption of bonds of political subdivisions of the State of Florida in the years 1939 and 1940. The only question in dispute is whether the basis for computing such gain or loss is the cost to the petitioner of the bonds originally purchased or the fair market value of the Refunding Bonds received in exchange therefor at the date of receipt. The petitioner submits that the basis did not change by reason of the *182 fact that the bonds redeemed were Refunding Bonds rather than bonds of the prior issue. The respondent's contention is that the Refunding Bonds were substantially different from the original bonds and that the exchange of bonds of the original issue for the Refunding Bonds was a transaction which gave rise to gain or loss and that therefore the basis to be used is the fair market value of the Refunding Bonds at the date of receipt. He points out that the Refunding Bonds, although of the same par value, matured at a later date, carried a different rate of interest, and that additional revenues of the political subdivision were dedicated to the payment of interest and of the principal of the Refunding Bonds. The question here is whether the substance of the transaction was one continuing investment by the petitioner in these Florida bonds. The petitioner relies particularly upon ; affirming our decision in . The Circuit Court's affirmance was upon the basis of our findings of fact and opinion. We had before us in that case the question *183 of whether the taxpayer's surrender of its original City of Detroit bonds and its receipt of Refunding Bonds in lieu thereof in pursuance of a refunding agreement was a transaction constituting a "sale or exchange of property" resulting in the realization of recognized gain or loss. We held that "a refunding of outstanding defaulted bonds of the city of Detroit, pursuant to a refunding agreement did not create a new debt, but resulted in a continuation of the existing indebtedness" and "that petitioner's surrender of defaulted bonds and receipt of the refunding bonds in lieu thereof, as evidence of the city's continuing indebtedness to it, was not an exchange of property giving rise to recognized gain or loss." It has been the uniform ruling of the Supreme Court of Florida that "refunding bonds are in legal effect authorized projections into the future of the original contractual obligations represented by the bonds which are lawfully refunded." ; . In the more recent case of ; , the Court said: This court *184 in previous cases treating the subject of refunding bonds, their attributes and characteristics, has held that refunding bonds create no new debt, but merely evidence an extension or renewal in a new form, of the original existing indebtedness, which original indebtedness is not extinguished by, but is merged into, the refunding bonds, with like force and effect as to obligation as if the original bonds had remained unrefunded by the issuance of such refunding bonds. In ; , the Court in a brief opinion sustained the validation of the City of Dunedin refunding bonds, expressly rejecting the contention that the security of those bonds was different from that of the original bonds which were refunded. In the light of the decisions of the Florida court it cannot be questioned that all of the refunding bonds here involved were merely a continuation of an existing indebtedness of the political subdivisions which issued them as theretofore evidenced by the original bonds. Upon the authority of the above-cited cases we sustain the petitioner's contention that the basis to be used in the computation of gain or loss *185 upon the redemption of his Florida bonds in 1939 and 1940 was the cost to him of the bonds originally purchased. The second point in issue is whether the basis for computing the gain or loss upon the sale of $7,100 5 Percent Debenture Bonds of Associated Gas & Electric Corporation is the fair market value of those bonds at the date they were received in exchange for a like amount of debentures of Associated Gas & Electric Co. or whether such basis is the cost to the petitioner of the bonds of the Associated Gas & Electric Co. It is the petitioner's contention that Associated Gas & Electric Co. was recapitalized in 1933 and 1934 and that the transaction by which the petitioner exchanged his bonds of the Company for those of the Corporation was not a transaction giving rise to gain or loss. In , the Court said at page 202 that "recapitalization" contemplates "the reshuffling of a capital structure, within the framework of an existing corporation." In the instant proceeding there was no recapitalization of Associated Gas & Electric Co. within this limited definition. The company and the corporation are two *186 different legal entities. The bonds of the "corporation" are not the bonds of the "company." Each corporation had different assets and liabilities. So far as the record shows Associated Gas & Electric Corporation was not a party to any reorganization or recapitalization of Associated Gas & Electric Co. We sustain the respondent's contention that the exchange by petitioner of his debentures of Associated Gas & Electric Co. for debentures of Associated Gas & Electric Corporation was a transaction which gave rise to gain or loss at the date of exchange. It therefore follows that the basis for computing gain or loss on the sale of the Corporation debentures was the value of those debentures at the date of exchange. The parties have stipulated that the petitioner accepted the proposition of the exchange on February 17, 1934, and that the fair market value of the Corporation debentures on that date was $23 for each $100 par value. We hold that that is the value to be used in computing gain or loss upon the sale of the Corporation debentures in 1940. Decision will be entered under Rule 50.